FILED

2015 NOV 10 PM 1:19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JEFFREY MARCIANO, an individual, ) | |
| ) | |
| Plaintiff, ) | CASE NO. |
| ) | 6:15-cv-1907-orl-41-KRS |
| v. ) | |
| ) | |
| FAIRWINDS FINANCIAL SERVICES, ) | |
| LLC, d/b/a Fairwinds Credit Union, ) | |
| a Florida Limited Liability Company, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR STATUTORY DAMAGES AND
INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 et seq.,
THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)
– JURY DEMAND –**

1. This is an action for damages under 47 U.S.C. § 227 et seq., The Telephone Consumer Protection Act ("TCPA"). Defendant, Fairwinds Financial Services, LLC, ("Fairwinds" or "Defendant") has bombarded Plaintiff with hundreds of unwanted and unlawful text messages, despite repeated requests to stop. To date, Defendant has sent Plaintiff in excess of 240 unsolicited text messages.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 47 U.S.C. § 227. The TCPA is a federal statute. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748, 181 L. Ed. 2d 881 (2012). Venue in this District is proper because Plaintiff resides here and Defendant does business and places phone calls in this District.

1

## PARTIES

3.     Plaintiff, JEFFREY MARCIANO ("Mr. Marciano" or "Plaintiff"), is a natural person and a citizen of the State of Florida, residing in Volusia County, Florida.

4.     Defendant, Fairwinds Financial Services, LLC, is a Florida limited liability company whose principal address is 3087 N. Alafaya Trail, Orlando, FL 32826, and whose Registered Agent for service of process in the State of Florida is Kathy Acfo Chonody, 135 West Central Blvd. Orlando, FL 32801.

5.     Defendant does business in the State of Florida under the name "Fairwinds Credit Union."

## A BRIEF OVERVIEW OF TEXT MESSAGING AND THE TCPA

6.     "Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (January 18, 2012) (internal citations omitted).

7.     The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

8.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

9. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

10. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

11. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. See FCC Declaratory Ruling, 23 FCC Rcd at 565 (¶ 10).

12. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

13. A text message does not need to be advertisement to violate the TCPA. The TCPA does not regulate content. Instead, it regulates context—the time, place, or manner of communication. *De Los Santos v. Millward Brown, Inc.*, 13-cv-80670-KAM (June 30, 2014).

14. The FCC specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In re SoundBite Communications, Inc.*, --- FCC Rcd. ----, No. 02-278, 2012 WL 5986338 (Nov. 29, 2012).

15. Many companies have websites which promote recurring "alert" programs in which text messages are sent *en masse* automatically to persons within a subscribed database. A

consumer specifies the content which he or she wishes to receive within the parameters set by either the consumer or the content provider.

16. In interpreting the "definition of automatic telephone dialing system," the FCC noted the basic function of such equipment was — "the *capacity* to dial numbers without human intervention." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092. In doing so, it interpreted "automatic telephone dialing system" to include equipment that utilizes lists or databases of known, nonrandom telephone numbers. *See generally, Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011).

17. The FCC defines "spam" as unwanted messages to email accounts and texts to mobile phones and other mobile devices. http://www.fcc.gov/guides/spam-unwanted-text-messages-and-email.

18. One of the leading think tanks, Pew Research Center, recently reported that 79% percent of cellular telephone owners use text messaging; of this group, 69% percent receive unwanted text message spam, 25% percent on a weekly basis. Source: http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last accessed February 4, 2015).

## FACTUAL ALLEGATIONS

19. Starting in or around January 1, 2015, Plaintiff began receiving unsolicited text messages from FAIRWINDS in regards to an account owned by someone other than Plaintiff.

20. The following text message is representative of the greater than 240 text messages sent by Defendant:

4



21. Plaintiff has never conducted any business with Defendant.

22. The text messages were placed with such frequency that the Plaintiff felt as though he was being harassed and abused by the Defendant especially in light of the fact that he had no prior relationship with the Defendant at all.

23. Upon information and belief, Fairwinds uses equipment which constitutes an automatic telephone dialing system within the scope of the TCPA. Defendant's equipment has the capacity to dial numbers sequentially from a list of numbers delivering text messages to multiple individuals. Plaintiff receives identical messages every day at approximately the same time. The identical content and transmission times for each text message, as well as the failure to respond to reply text messages suggest use of an automated system which is programmed to send text messages and is not monitored by a live person.

24. Additionally, use of the impersonal sender ID, "FRM:Fairwinds CU MSG:" accompanying every text message received by Plaintiff, indicates that automated equipment, instead of individual human senders, was utilized to send the text messages.

25. Since the text messages began in January 2015, Plaintiff has contacted Defendant

5

several times using different methods in an attempt to stop the text messages. On each occasion, Plaintiff was unsuccessful, due either to Defendant's negligent disregard for the problem or intentional refusal to take the necessary measures to halt the delivery of unwanted text messages to Plaintiff.

26. As of the filing of this complaint, Plaintiff has received in excess of 240 text messages from Defendant.

## COUNT I
## NEGLIGENT VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

27. Plaintiff incorporates the foregoing paragraphs.

28. Defendant sent unwanted text messages to Plaintiff automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called from a database of numbers.

29. The excessive calls (*i.e.*, text messages sent post-revocation) were made without the prior express consent of the Plaintiff.

30. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

31. WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

(a) Statutory damages at $500 dollars per call for negligent violations of the TCPA;

(b) An injunction requiring Defendant to cease all communications in violation of the TCPA;

(c) Such further relief as this Court may deem appropriate.

## COUNT II

### WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT

32. Plaintiff incorporates the foregoing paragraphs.

33. Defendant knowingly or willfully sent unwanted text messages to Plaintiff using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called from a database of numbers.

34. The excessive calls (*i.e.*, text messages sent post-revocation) were made without the Plaintiff's prior express consent.

35. The aforesaid calls were made in knowing violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

(a) Statutory damages of up to $1500 dollars per call for each willful violation of the TCPA;

(b) An injunction requiring Defendant to cease all communications in violation of the TCPA;

(c) Such further relief as this Court may deem appropriate.

## JURY DEMAND

36.   Plaintiff demands trial by jury.

Dated: November 5, 2015

Respectfully submitted,

s/ Scott D. Owens
Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: (954) 589-0588
Fax: (954) 337-0666
Florida Bar No. 0597651
scott@scottdowens.com